UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK MILETAK,<br><br>   Plaintiff,<br><br>  v.<br><br>NATIONWIDE MUTUAL INSURANCE COMPANY, et al.,<br><br>   Defendants. | Case No. 5:25-cv-03931-PCP<br><br>**ORDER DENYING MOTIONS FOR A PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT AND TO STRIKE AFFIRMATIVE DEFENSES**<br><br>Re: Dkt. Nos. 2, 15, 16 |

Pro se plaintiff Nick Miletak brings a declaratory judgment action against defendants Nationwide Mutual Insurance Company and AMCO Insurance Company regarding defendants' duty to defend and indemnify Miletak, pursuant to a homeowner's insurance policy that Miletak's mother purchased, in a California state court malicious prosecution lawsuit. Before the Court are Miletak's motions for a preliminary injunction and summary judgment and to strike defendants' affirmative defenses. For the following reasons, Miletak's motions are denied.

## BACKGROUND

This case concerns Miletak's appeal of a malicious prosecution judgment against him in California state court and a homeowners' insurance policy that Miletak's mother purchased in the early 2000s.

Miletak resided at 14745 Conway Avenue, San Jose, CA 95124 from September 1993 to April 10, 2021 with his mother Filka Miletak and his brother Vlaho Miletak. According to Miletak, his mother died on April 10, 2021, and Miletak continued living at that address with his brother until May 5, 2023.

Sometime in the early 2000's—around 2004, according to Miletak—Filka Miletak purchased AMCO Homeowners Policy HA 0022407268-4 from Patrick Eilert of Eilert Insurance

1   Agency, LCC. Defendants assert that the policy listed 14745 Conway Avenue, San Jose, CA
2   95124 as the "insured location" and named Filka Miletak and Vlaho Miletak as insureds. The
3   policy also covered other residents at the insured location. Miletak asserts that he is also a "named
4   insured" under the policy, while defendants contend that if Miletak is covered by the policy it is
5   only as a resident. According to defendants, the policy included personal injury coverage for
6   malicious prosecution and required that an insured requesting coverage for an "occurrence"
7   provide defendants timely written notice of a claim as soon as practicably reasonable.

8       In April 2015, Miletak filed a lawsuit against Royal Coach Tours, Inc. in Santa Clara
9   County Superior Court for intentional misrepresentation, breach of contract, promissory estoppel,
10  and constructive damages. The court dismissed Miletak's claims with prejudice and the California
11  Court of Appeal affirmed. On March 4, 2020, Royal Coach filed a lawsuit against Miletak for
12  malicious prosecution related to Miletak's 2015 case against the company. In June 2024, Royal
13  Coach obtained a monetary judgment against Miletak at trial in the amount of $257,197.53:
14  $52,879.01 in compensatory damages, $79,318.52 in reputational harm damages, and $125,000 in
15  exemplary damages pursuant to California Civil Code section 3294. Miletak appealed to the
16  California Court of Appeal, and that appeal is ongoing.

17      Miletak asserts that defendants are obligated to provide him with appellate defense counsel
18  in that lawsuit and to indemnify him against any judgment pursuant to the homeowners' insurance
19  policy.

20      Miletak contacted defendants about personal injury coverage under the insurance policy on
21  February 4, 2022. At approximately 4:21 p.m., Miletak called defendants' claim department and
22  spoke to an intake representative. The parties dispute the substance of that call. Miletak claims that
23  the call lasted 35 minutes and that the representative incorrectly informed him that he did not have
24  personal liability coverage. He states that the representative refused to process his claim and
25  referred him to his insurance agent, Patrick Eilert.

26      Defendants claim that Miletak asked the intake representative whether the homeowner
27  policy in question would cover a property owner being sued. The representative explained that a
28  claim would need to be opened for an adjuster to investigate and determine whether there was

1  coverage. The representative offered to obtain information from Miletak to open a claim but
2  Miletak declined and asked to speak to a manager instead. The representative transferred Miletak
3  to her manager. Miletak did not file a claim.

4　　On October 17, 2024, approximately four months after the judgment against him at trial,
5  Miletak filed a written claim with defendants. Defendants denied that claim due to untimely
6  notice. They explained that Miletak's failure to notify them of Royal Coach's lawsuit against him
7  until more than four years after it was filed deprived them of an opportunity to investigate, hire
8  defense counsel, and attempt to settle the lawsuit, which constituted substantial prejudice.

9　　Miletak filed this lawsuit and an ex parte application for emergency relief on May 6, 2025.
10  The Court converted that application into a motion for preliminary injunction. Miletak proceeded
11  to file a motion for summary judgment and a motion to strike defendants' affirmative defenses.

## LEGAL STANDARDS

### I. Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). Under the "sliding scale" variant of the same standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). Under either version of the standard, a plaintiff must demonstrate that they are likely to suffer irreparable injury in the absence of preliminary relief. "The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it." *Dymo Indus., Inc. v. Tapeprinter, Inc.,* 326 F.2d 141, 143 (9th Cir. 1964).

### II. Summary Judgment

Courts may grant summary judgment "if the movant shows that there is no genuine dispute

3

1  as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
2  56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a
3  dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return
4  a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5        The moving party bears the initial burden to demonstrate a lack of genuine factual
6  dispute. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, the
7  burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact
8  remains. *Id.* The evidence and inferences drawn from the facts must be viewed in the light most
9  favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

10        A party moving for summary judgment must identify for Court the portions of material on
11  file that demonstrate the absence of any genuine issues of material fact. *T.W. Electric Service, Inc.*
12  *v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "The district court need not
13  examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not
14  set forth in the … papers with adequate references so that it could conveniently be
15  found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### III.  Strike Affirmative Defenses

17        Rule 12(f) allows the Court to "strike from a pleading an insufficient defense or a
18  redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The key to
19  determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair
20  notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Motions
21  to strike are "generally not granted unless it is clear that the matter to be stricken could have no
22  possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Cent. Life Ins. Co.*,
23  814 F. Supp. 820, 830 (N.D. Cal. 1992). "Ultimately, whether to grant a motion to strike lies
24  within the sound discretion of the district court." *Kanaan v. Yaqub*, 709 F.Supp.3d 864, 867 (N.D.
25  Cal. Dec. 26, 2023) (cleaned up); *see* Fed. R. Civ. P. 12(f) (emphasis added) ("The court *may*
26  strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or
27  scandalous matter.").

4

# ANALYSIS

**I.  Miletak's motion for a preliminary injunction is denied.**

Miletak has not carried his burden to show that the four preliminary injunction factors favor granting an injunction.

**A.  Miletak has not shown that he is likely to succeed on the merits.**

The parties acknowledge that the insurance policy in question included personal injury coverage for malicious prosecution. Defendants assert that the policy required an insured requesting coverage for an "occurrence" to provide defendants timely written notice of a claim as soon as practicably reasonable. Specifically, the policy states:

> We have no duty to provide coverage under this policy if the person seeking coverage fails to comply with the following duties …. :
>
> 1. Give written notice to us or our agent as soon as is practical which sets forth:
>    a. The identity of the policy and "named Insured" shown in the Declarations;
>    b. Reasonably available information on the time, place and circumstances of "occurrence"; and
>    c. Names and addresses of any claimants and witnesses
>
> 2. Cooperate with us in the investigation, settlement, or defense of any claim or suit;
>
> 3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence."

Miletak argues that he met the requirements of the policy because he gave notice immediately upon discovering that the policy included coverage for malicious prosecution, presumably in reference to his February 4, 2022 phone call to defendants' claim department.

This theory is flawed for multiple reasons. Miletak has not shown that his communication with defendants on February 4, 2022 met the specific requirements of the insurance policy. Further, even if that call were sufficient to constitute notice, it did not occur until more than a year and a half after the commencement of the malicious prosecution lawsuit against Miletak. Miletak claims that he was unaware that his policy might provide coverage before that point. But an insured's ignorance of their policy provisions does not justify untimely notice. *USLIFE Sav. &*

5

*Loan Assn. v. Nat'l Sur. Corp*, 115 Cal. App. 3d 336 (holding that "ignorance of policy provisions" does not "excuse late claim filing"); *Jamestown Builders, Inc. v. Gen. Star Indem. Co.*, 77 Cal. App. 4th 341, 349 (1999) ("[Plaintiff's] ignorance of its policy rights does not extend the time in which it was required to take action."); *Dietz Int'l Pub. Adjusters of California, Inc. v. Evanston Ins. Co.*, 796 F. Supp. 2d 1197 (C.D. Cal. 2011), *aff'd*, 515 F. App'x 680 (9th Cir. 2013) ("Failure to investigate and assess potential coverage does not support a finding that payments made prior to tender were involuntary.").

Under California's notice-prejudice rule, an insurance company may not deny an insured's claim based on untimely notice unless it can show actual prejudice. *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 819 (1994) (explaining California's notice-prejudice rule). Defendants have shown that due to the significant delay in Miletak's notice of the action against him they were deprived of an opportunity to hire counsel to defend Miletak at trial, investigate potential defenses and minimize Miletak's potential liabilities, and potentially settle the claim for less than the amount of the judgment that was ultimately entered against Miletak. These consequences constitute prejudice. *See, e.g.*, *Earle v. State Farm Fire & Cas. Co.*, 935 F. Supp. 1076, 1080 (N.D. Cal. 1996); *Select Ins. Co. v. Sup. Ct.*, 226 Cal. App. 3d 631, 638 (1990); *Collin*, 21 Cal. App. 4th at 819-820.

Accordingly, Miletak's significant delay in providing notice to defendants of Royal Coach's malicious prosecution lawsuit against due to his ignorance of the policy provisions and the substantial prejudice caused to defendants by that delay makes success on the merits in this action highly unlikely.

**B.    Miletak has not shown that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief.**

Miletak claims that without a preliminary injunction he will "lose the right to meaningfully pursue an appeal" and he faces a risk of harm to his legal position and property interests. The specific harm that Miletak alleges he faces is that he will have to proceed in appellate proceedings without counsel and may be forced to pay the $257,197.53 judgment against him. Miletak has not shown, however, that he will be unable to participate in his appeal without counsel. Miletak's long

1   history of representing himself in litigation, including both in his original lawsuit against Royal

2   Coach and in Royal Coach's lawsuit against him, suggests that he will not be prevented from

3   participating in his appeal if he is unable to retain counsel.[1] Further, Miletak has not shown that in

4   the absence of a preliminary injunction compelling defendants to provide counsel he has no other

5   way of obtaining representation. He states that he has reached out to attorneys and legal

6   organizations to request pro bono representation but has not been successful. He also states that he

7   is not in a financial position to retain private counsel *without accessing equity in [his] homestead*

8   *property in Florida*. He provides no reason, however, why he is unable to access equity in that

9   property in order to finance his appeal. While doing so may be inconvenient or burdensome, such

10  circumstances do not constitute irreparable harm. Miletak has been a plaintiff in at least several

11  dozen prior lawsuits and his purportedly limited financial resources have not prevented his

12  participation in that litigation.

### C. The balance of equities and public interest do not weigh for or against granting a preliminary injunction.

15  Miletak argues that the balance of equities and public interest favor granting a preliminary

16  injunction because the potential loss of property and "appeals rights" that Miletak faces far exceed

17  the cost to defendants of providing representation to Miletak in state appellate proceedings.

18  "In considering the balance of equities, a court considering a preliminary injunction must

19  assess the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is

20  improperly granted or denied." *Novus Optimum Labs v. Tamayo*, No. 13-CV-01119-JST, 2013

21  WL 3354566, at *7 (N.D. Cal. July 2, 2013) (cleaned up).

22  As discussed above, Miletak has not shown that he will be deprived of an opportunity to

23  participate in his appeal in the absence of a preliminary injunction because he has not

24  demonstrated that he is unable to obtain counsel by other means. While he faces the potential

25  enforcement of the $257,197.53 judgment against him, if no injunction is granted that harm may

---

[1] The Court takes judicial notice of Miletak's prior lawsuits because their occurrence "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and they are thus "not subject to reasonable dispute." Fed. R. Evid. 201.

United States District Court
Northern District of California

1 still be remedied by a later damages award. That harm is also speculative, as Miletak has not
2 shown that granting the preliminary injunction is likely to prevent the California Court of Appeal
3 from affirming the judgment. The harm that defendants face is attorneys' fees and costs in
4 Miletak's appeal. Because the only harm that any party faces if an injunction is improperly granted
5 or denied is economic, and therefore capable of being remedied by a damages award, this factor is
6 neutral.

"The public interest inquiry primarily addresses impact on non-parties rather than parties. It embodies the Supreme Court's direction that in exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931–32 (9th Cir. 2003) (cleaned up). "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009) (cleaned up).

The reach of the injunction sought is limited to the parties and no broader public interest is implicated. Accordingly, this factor is neutral.

Because none of the preliminary injunction factors favors granting an injunction, Miletak's motion for preliminary injunction is denied.

## II. Miletak's motion for summary judgment is denied.

Miletak asserts that the following facts are undisputed:

- Miletak is the named insured under Policy No. HA 0022407268-4.
- The policy explicitly includes "malicious prosecution" under the definition of covered personal injury.
- Miletak contacted Nationwide's claims department on February 4, 2022 to report the lawsuit, as confirmed by Defendants' April 1, 2025 letter.
- Defendants denied coverage, falsely asserting that no notice was provided until October 2024.
- On July 26, 2022, Miletak received a settlement demand of $10,000 which would have fully resolved the claim.

8

- The matter proceeded to judgment, resulting in a $257,197.53 award, including punitive damages.

Pursuant to Federal Rule of Civil Procedure 56(c)(1), "[a] party asserting that a fact cannot be … genuinely disputed must support the assertion by … citing to particular parts of materials in the record." Miletak offers no support for his claim that the above facts are undisputed. Neither his motion nor his reply includes any citations to the record. Although he states that there are no genuine issues of material fact, he fails to "identify[] for court the portions of the materials on file that … demonstrate the absence of any genuine issues of material fact." *T.W. Electrical*, 809 F.2d at 1157. It is not the job of the district court "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996). It was instead Miletak's responsibility to identify the relevant portions of the record and he has failed to do so here.

Further, even if Miletak had cited to the relevant portions of the record, he would not have been able to meet his burden of showing that there is no genuine dispute as to any material fact. At the very least, the parties dispute whether Miletak provided timely notice and whether defendants were prejudiced by any untimeliness. Such disputes are sufficient to preclude summary judgment.

Accordingly, Miletak's motion for summary judgment is denied.

### III.    Miletak's motion to strike affirmative defenses is denied.

Miletak moves to strike several of defendants' affirmative defenses, asserting that they are not properly asserted as defenses in general or in the particular circumstances of this case.

"The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial." *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1169 (N.D. Cal. 2019). Where a motion to strike would not actually streamline the litigation, however, it serves little purpose. Generally, "motions to strike are disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Gallardo v. AT & T Mobility, LLC*, 937 F. Supp. 2d 1128, 1134 (N.D. Cal. 2013). A motion to strike "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Smith v. Levine Leichtman Cap. Partners, Inc.*, 723 F. Supp. 2d 1205, 1212 (N.D. Cal.

9

2010); *see Lee v. Hertz Corp.*, 330 F.R.D. 557, 562 (N.D. Cal. 2019) ("Proceeding with a motion to strike almost inevitably is a less efficient way of moving towards a resolution on the merits …. While a court has the authority to grant a motion to strike … at the pleading stage, such motions are rarely successful."); *see also Prime Focus Creative Servs. Canada Inc. v. Legend3D, Inc.*, No. CV152340MWFPLAX, 2016 WL 6678009, at *6 (C.D. Cal. Mar. 1, 2016) ("Striking a party's pleadings is an extreme measure that is infrequently granted.").

Given the general policy against striking portions of pleadings and absent any showing that doing so would meaningfully streamline this litigation, the Court denies Miletak's motion to strike.

## CONCLUSION

For the foregoing reasons, Miletak's motions for a preliminary injunction and summary judgment and to strike defendants' affirmative defenses are denied.

**IT IS SO ORDERED.**

Dated: July 11, 2025

P. Casey Pitts
United States District Judge